**U.S. DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

Valerie Kline
83 E Street
Lothian, MD 20711
Plaintiff

Case No: 14-1498

v.

Katherine Archuleta, Director
U. S. Office of Personnel Management
1900 E Street, N.W.
Washington, D.C. 20415

AND

William M. Davis
5 Cannon Ridge Drive
Fredericksburg, VA 22405

AND

Claudio A. Benedi
6008 5th Rd N
Arlington, VA 22203

AND

Eric H. Holder, Jr.,
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

AND

Ronald C. Machen, Jr.
U.S. Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20530

Defendants

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

### NATURE OF THE ACTION

1. Plaintiff, Valerie Kline, is a white female employed by the U. S. Office of Personnel Management ("OPM") as a Management Analyst in Publications Management ("PM") formerly the Publications Management Branch and Publications Management Group.

2. Plaintiff brings this action after being subjected to unlawful discrimination on the basis of sex by OPM managers and in retaliation for engaging in protected activity.

3. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 USCS § 1981, to remedy the acts of discrimination and retaliation.

### JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 42 U.S.C. § 2000e et seq. Equitable and other just relief are sought pursuant to 42 U.S.C. Section 2000e-5 (f) through (k) and 2000e16.

5. This case arises under the Constitution and laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution, 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 2000e-5(f) and 2000e-16.

6. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the inherent equitable powers of this Court.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) & (e) and 42 U.S.C. § 2000e-5(f) because (1) the OPM is within this judicial district, (2) the events or omissions giving rise to Plaintiff's claim for relief occurred in this judicial district, (3)

the unlawful acts are alleged to have been committed in this judicial district, and (4) the records relevant to such acts are maintained and administered in this judicial district.

8. Plaintiff has fulfilled all conditions precedent under Title VII prior to instituting this lawsuit, as necessary, and has otherwise exhausted her administrative remedies.

## PARTIES

9. Plaintiff, Valerie Kline, is a citizen of the United States, has been a civil servant for approximately twenty (25) years, currently lives in Maryland and is a member of a protected class under Title VII.

10. Defendant Katherine Archuleta is the Director of the Office of Personnel Management ("OPM"), and as such, heads the OPM, a department within the Legislative Branch of the Government of the United States. As the Director of OPM, Ms. Archuleta is responsible for the personnel actions, omissions and practices at OPM. She is sued in her official capacity.

11. Publications Management ("PM") is a branch under the Facilities, Contracting and Security Department of OPM, and is responsible for managing OPM's Regulatory System.

12. Defendant William M. Davis is a retired Chief of PM and had formerly supervised Plaintiff as her first line supervisor.

13. Defendant Claudio Benedi is a retired Director of PM and had formerly supervised Plaintiff as her second line supervisor.

14. Defendant Eric H. Holder, Jr. is the U.S. Attorney General for the U.S. Department of Justice, an agency of the United States.

15. Defendant Ronald C. Machen, Jr. is the U.S. Attorney for the District of Columbia, an agency of the United States.

## STATEMENT OF FACTS

16. On October 7, 2002, Ms. Kline was hired by OPM as a full-time, GS-12/3 management analyst in PM to work on the regulatory team performing regulatory work.

17. Ms. Kline was hired as the backup to Jacquline Carter, a GS-13 management analyst who managed OPM's regulatory issuances system.

18. Ms. Kline was hired as the backup to Ms. Carter because Ms. Carter was contemplating retirement at the time.

19. Approximately 8 months after Ms. Kline was hired, her Position Description (PD) was revised to add some non-regulatory duties because there was not enough regulatory work to support 2 full-time regulatory positions in PM.

20. In May 2003, Ms. Kline's immediate supervisor, Mr. Davis, informed Ms. Kline that her PD was being changed "temporarily" until such time that Ms. Carter retired.

21. Mr. Davis further informed Kline she would still assume responsibility for managing the regulatory issuances program after Ms. Carter retired.

22. On this basis, Ms. Kline agreed to the revisions to her PD and continued performing regulatory work in addition to some non-regulatory duties after her PD was revised.

23. Ms. Kline continued to act as Ms. Carter's backup for approximately the next 4 years.

24. Ms. Kline received "exceeds fully successful" performance appraisals for her regulatory work for the years 2003 – 2005 and a "fully successful" rating on her regulatory work in 2006.

25. On August 9, 2006, Ms. Kline filed a formal EEO action against Defendant for diminishing her duties, which case is currently pending before the U.S. District Court for the District of Columbia, Case. No. 10-1802.

26. Defendant was aware of the August 9, 2006, EEO action filed by Plaintiff.

27. On or around October 17, 2006, Stephen Hickman, a white male, began working on PM's regulatory team as a GS-12/1 management analyst.

28. At the time Mr. Hickman was hired, there was not enough regulatory work to support another full- or part-time regulatory position in PMG.

29. Ms. Kline, a GS-12/5 at the time Mr. Hickman was hired, had seniority over him.

30. On November 3, 2006, Ms. Carter retired.

31. Ms. Carter's position for managing the regulatory issuances system was not advertised in USAJOBs prior to her retirement.

32. On approximately November 6, 2006, Mr. Benedi assigned the job of managing the regulatory issuances system to Mr. Hickman.

33. On approximately November 6, 2006, Ms. Carter began working for PM as a reemployed annuitant without a dual compensation salary offset to her annuity.

34. Before Ms. Carter retired, she developed operating procedures for OPM's regulatory issuances system.

35. OPM justified the reemployment of Ms. Carter by claiming she needed to develop a training manual for the regulatory issuances system.

36. OPM refused to provide a copy of the training manual Ms. Carter allegedly developed during her reemployment.

37. During her reemployment, Ms. Carter provided training and assistance to Mr. Hickman.

38. At the time Ms. Carter retired, Mr. Hickman was not eligible for a GS-13 position under 5 CFR §335.104[1], 5 CFR §338.301[2], 5 CFR § 330.502[3] and other regulations, since he had only been hired for 20 days for the same position that Ms. Kline had been hired for 4 years prior.

39. At the time Ms. Carter retired, Ms. Kline was eligible for a GS-13 position.

40. The head of an Executive department may detail employees among the bureaus and offices of his/her department by written order for not more than 120 days.  See 5 U.S. Code § 3341.

41. Mr. Hickman was not detailed to Ms. Carter's job by the head of OPM.

42. The instrument OPM uses when officially reassigning or detailing an employee to a different position is a Form SF-52, Request for Personnel Action.

43. No Form SF-52 for either detailing or reassigning Mr. Hickman into the position for managing the regulatory issuances system was ever issued.

---

[1] Which provides that "No employee shall receive a career ladder promotion unless his or her current rating of record under part 430 of this chapter is "Fully Successful" (level 3) or higher." Here, Mr. Hickman had not yet received any performance evaluations.

[2] Which provides that "Agencies must ensure that employees who are given competitive service appointments meet the requirements included in the Office of Personnel Management's Operating Manual: Qualification Standards for General Schedule Positions", which requires experience of "1 year equivalent to at least next lower grade level" in order to be promoted to a higher grade position. Here, Mr. Hickman was assigned responsibility for managing the regulatory issuance system, a GS-13 position, when he had only been hired 20 days earlier as a GS-12/1 and was not eligible for a GS-13.

[3] Which provides that "An agency must wait at least 90 days after an employee's latest nontemporary competitive appointment before the agency may take the following actions: (1) Promote an employee; [or] (2) Transfer, reinstate, reassign, or detail an employee to a different position." Here, Mr. Hickman had only been employed for 20 days.

44. At the time Ms. Carter retired, OPM regulations proscribed reassignments of an employee into a different position unless that employee had been employed in his or her latest nontemporary competitive appointment for 3 months.  See 5 CFR §§ 330.102 and 330.502.

45. At the time Ms. Carter retired, Ms. Kline had been in her latest nontemporary competitive appointment for approximately 4 years.

46. At the time when Mr. Hickman was assigned responsibility for managing the regulatory issuances system, he had only been in his nontemporary competitive appointment for 20 days (from his date of hire on or around October 17, 2006 to the date of his reassignment on November 6, 2006).

47. Mr. Hickman was assigned responsibility for managing the regulatory issuance system for 22 months without an official reassignment or official detail of him into that position.

48. After 22 months of Mr. Hickman performing the duties of managing the regulatory issuances system, the position for managing the regulatory issuances system was competitively advertised in USAJOBS on August 31, 2008.

49. Defendants assigned Mr. Hickman responsibility for managing the regulatory issuances system for 22 months in lieu of filling the position vacated by Ms. Carter via the competitive hiring process mandated by Congress.

50. Plaintiff has exhausted her administrative remedies by filing a complaint with the U.S. Equal Employment Opportunity Commission, Request Number 0520130583 and Appeal Number 0120103493, which resulted in a denial of Plaintiff's claim, thereby giving Plaintiff "the right to file a civil action in an appropriate United States District

Court within ninety (90) calendar days from the date that [Plaintiff] receive[d] this decision." *See Ex. A, EEOC Decision.*

51. Plaintiff did not receive the Court Decision described in paragraph 49 above until June1, 2014.

**COUNT I – DISCRIMINATION**

Plaintiff incorporates ¶¶ 1 through 46 above. Defendant discriminated against Plaintiff, a white female, on the basis of sex by subjecting her to the adverse action of failing to promote and/or reassign her into Ms. Carter's position after she (Ms. Carter) retired but instead giving Mr. Hickman, a white male, responsibility for managing the regulatory issuances system after the position was vacated by Ms. Carter.

Defendant discriminated against Ms. Kline because Mr. Hickman was not eligible for the GS-13 managing position whereas Ms. Kline was eligible for the GS-13 managing position; Mr. Hickman had less experience performing OPM's regulatory work than Ms. Kline; Mr. Hickman had less seniority than Ms. Kline; Mr. Hickman was not eligible for a reassignment into the position for managing the regulatory issuances system at the time Ms. Carter vacated the position whereas Ms. Kline was eligible for a reassignment into the position at that time; Mr. Hickman was constructively and unlawfully reassigned the position for managing the regulatory issuances system in violation of Defendant's own regulations; and/or Mr. Hickman was constructively and unlawfully detailed into the position for managing the regulatory issuances system in violation of statutory law.

Defendant committed discrimination by giving responsibility for the regulatory issuances system to an ineligible, GS-12/1, junior male over an eligible, GS-12/5, higher qualified senior female.

Defendant displayed retaliatory animus toward Plaintiff and otherwise had no legitimate, nondiscriminatory reason for the actions as evidenced by Defendants appointment of a less qualified, less experienced, newly hired employee over a more qualified, more experienced, long term employee who had been hired to eventually replace the person whose position was being filled and who had been working directly with the person whose position was being filled for 4 years.

**COUNT II – RETALIATION**

Plaintiff incorporates ¶¶ 1 through 46 above. Defendants knew Plaintiff had recently engaged and was actively engaged in protected activity when Plaintiff filed her EEO Complaint on August 9, 2006. Defendants subsequently retaliated against Plaintiff by failing to competitively advertise the GS-13 position for managing the regulatory issuances system on a timely basis once Ms. Carter vacated the position.

Defendant's failure to timely advertise the position for managing the regulatory issuances system was causally connected to Plaintiff's protected activity because Plaintiff had recently engaged and/or was actively engaged in protected activity around the time of Ms. Carter's retirement; Defendants refrained from advertising the position immediately after Ms. Carter retired in order to keep Plaintiff from having a fair and equal opportunity to compete for the position and to prevent her from acquiring the position over Mr. Hickman who was not eligible for the position at the time of Ms. Carter's retirement.

Defendant displayed retaliatory animus toward Plaintiff; and otherwise had no legitimate, nondiscriminatory reason for its actions as evidenced by Defendants appointment of a less qualified, less experienced, newly hired employee over a more qualified, more experienced, long term employee who had been hired to eventually replace the person whose position was being filled and who had been working directly with the person whose position was being filled for four years.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor and against Defendant. Plaintiff requests a jury trial on all triable issues and to be awarded the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant's actions have violated Title VII;

b. Appropriate injunctive relief, including but not limited to an order restraining Defendant from engaging in further retaliatory conduct against Plaintiff of the types of which Plaintiff complains herein;

c. Appoint Plaintiff responsibility for managing the regulatory issuances system;

d. Compensatory damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, loss of health, anxiety, stress, depression, stigma, humiliation, and loss of self-esteem to be determined by a jury;

e. Back Pay;

f. Promotion to a GS-14/5 pay level or retirement at a 3-year high GS-15 rate ;

g. Pre-judgment and post-judgment interest at the highest lawful rate;

    h. Attorneys' fees and associated costs of this action, if any; and

i. Other such further relief as justice allows.

DATED: August 29, 2014

Respectfully submitted,

*/s/ Tyler Jay King, Esq.*
Tyler Jay King, Esq.
1225 I St. NW, #602
Washington, DC 20005
(202) 779-9711
info@lawgroupfs.com

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable as such.

Respectfully submitted,

*/s/ Tyler Jay King, Esq.*
Tyler Jay King, Esq.