UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE KLINE, <br><br> Plaintiff, <br><br> v. <br><br> KATHERINE ARCHULETA, et al., <br><br> Defendants. | Civil Action No. 14-cv-1498 |

MEMORANDUM OPINION

In this suit, Ms. Kline alleges that her employer, the United States Office of Personnel Management (OPM) discriminated or retaliated against her by giving responsibility for the regulatory issuances system to Mr. Stephen Hickman instead of to Ms. Kline. Before the Court is defendant's motion [ECF No. 13] to dismiss, or in the alternative for summary judgment. Also before the Court is plaintiff's motion [ECF No. 18] for leave to file an amended complaint.

I. BACKGROUND

In 2002, OPM hired Valerie Kline as a GS-12 Management Analyst to perform regulatory duties. In 2003, however, Ms. Kline agreed to a reassignment to a revised position description that included primarily non-regulatory publication duties. *See* 2003 Position Description of Valerie Kline ("2003 Kline PD"), Defs.' Ex. 3, ECF No. 13-3. This is the third District Court action along with several administrative actions that Ms. Kline has filed out of dissatisfaction with her job requirements following her reassignment.

In *Kline v. Springer*, 602 F. Supp. 2d 234 (D.D.C. 2009), *aff'd* 404 Fed. App'x. 505 (D.C. Cir. 2010), Ms. Kline alleged that she had been subjected to discrimination in 2004-05 when she

1

received a "bad" evaluation of duties assigned to her under her new position description. In a second suit, decided this date, Ms. Kline alleged that she was retaliated against when her substantive regulatory duties were stripped from her after she complained to the EEOC. *Kline v. Archuleta*, Civ A. No. 10-1802 (D.D.C. April 14, 2015) ("*Kline II*").

In this case, Ms. Kline alleges OPM discriminated or retaliated against her "by giving responsibility for the regulatory issuances system" to Mr. Stephen Hickman instead of to her. Compl. at 8. While a more complete summary of the factual background in this case can be found in the today's companion case, *Kline II*, the relevant facts are as follows.

In 2006, in preparation for Ms. Carter's retirement, OPM advertised a "GS-12-classified position nearly identical to the one Plaintiff applied for and was hired to fill in 2002." Opp'n 21. This position was advertised as a full-time regulatory position. Nonetheless, Ms. Kline failed to apply for this position, and OPM hired Mr. Stephen Hickman into the regulatory position.

In 2008, OPM competitively advertised a GS-13 position with responsibility for managing the regulatory issuances system in USAJOBS. Compl. ¶ 48. Ms. Kline did not apply for this position either, and Mr. Hickman was ultimately promoted into this position.

Ms. Kline's various allegations are indeed unclear and OPM correctly points out that they raise issues of res judicata and administration exhaustion, among others. For example, if Ms. Kline's claim is a "non-selection" claim, she lacks standing to challenge their actions because she did not apply to *either* the 2006 GS-12 regulatory position or the GS-13 position filled in 2008.

In a creative attempt to avoid this obvious problem, Ms. Kline insists that she is not bringing a "non-selection" claim but instead a claim of "failure to promote." Opp'n at 10, ECF No. 17. "[T]he discrimination claim in this case is not based on "non-selection" of the GS-12 classified position advertised in August 31, 2006, but that Defendants discriminated against

2

Plaintiff by assigning the duties encumbered under the GS-13-classified position to Mr. Hickman after Ms. Carter retired." *Id.* at 11. Essentially, Ms. Kline alleges that OPM advertised Mr. Hickman's GS-12 position "to unlawfully fill Ms. Carter's GS-13 position" Opp'n 14.

Therefore, the only question before the Court is whether, after Ms. Carter retired, OPM discriminated or retaliated against Ms. Kline when they assigned primary responsibility of regulatory duties to Mr. Hickman rather than Ms. Kline. With the issue thus narrowed, the Court considers defendant's motion.

## II. MOTION TO DISMISS

A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept all factual statements made by the non-moving party as true when deciding a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, conclusory legal allegations devoid of any factual support do not enjoy the same assumption of truth. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Accepting all facts pleaded as true, and viewing all inferences in a light most favorable to Ms. Kline, the Court finds that the complaint sets forth sufficient factual allegations to support her claim to relief. Accordingly, defendants' motion is denied.

## III. SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment should be granted when the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations,

. . . admissions, interrogatory answers, or other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)-(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

### B. Title VII Analysis

While a challenged action need not affect a plaintiff's employment status to be considered unlawful retaliation, *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011), the action must "produce[] an injury or harm," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "[N]ot everything that makes an employee unhappy is an actionable adverse action" under Title VII. *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (internal quotation marks and citations omitted). "Actionable retaliation claims are limited to those where an employee causes '*material* adversity,' not 'trivial harms.'" *Wiley v. Glassman*, 511 F.3d 151, 161 (D.C. Cir. 2007) (citing *Burlington N.*, 548 U.S. at 68).

Ms. Kline apparently views the full-time regulatory position that was advertised as a kind of *promotion* rather than a different position, and feels that these responsibilities should have been given to her without having to apply. But despite her unsupported and subjective belief to the contrary, Ms. Kline had no "right" to be assigned primary responsibility of regulatory duties.[1] That issue was discussed in a separate Opinion issued by this Court on this date, which held that Ms.

---

[1] Indeed, this claim was probably never exhausted. The administrative judge in his order granting summary judgment to OPM recognized this: "[T]he decision to advertise the position, as opposed to simply giving the Complainant the duties in question, is not before me as a separate issue." Decision and Order, Defs.' Ex. 14 at 7.

Kline had been reassigned to a job without primarily responsibility for substantive regulatory work—instead, she was to "assist the regulatory team" as needed. *See Kline II*. She cites no authority for her unsupported assumption that OPM had an obligation to "reassign" or "promote" her into a different position. There is nothing in the record, other than Ms. Kline's unsupported, self-serving assertions, to suggest otherwise. Ms. Kline's allegations that she was advised orally by her supervisors in 2003 that that her position reassignment and PD change were "temporary" and that she would "still assume responsibility for managing the regulatory issuances after Ms. Carter retired," Compl. ¶¶ 20-21, are unsupported and unavailing. Her PD, which is undisputed, clearly reassigned her into a new, non-regulatory position. Furthermore, Ms. Kline's position was at the full performance level, or the highest grade level established for a particular position—sometimes called the "target level of a career ladder." Declaration of Joseph J. Marcec ("Marcec Decl.") ¶ 8, ECF No. 23-2. Therefore, Ms. Kline would only have been eligible for promotion after competing for a position—she was not automatically eligible for any promotion. *Id.*

Thus, upon Ms. Carter's retirement, OPM advertised a position describing full-time, substantive regulatory duties. Ms. Kline <u>did not apply</u> for this position. Ms. Kline argues that a GS-12 employee could not take over Ms. Carter's duties, which were GS-13-level responsibilities, but she cites no law prohibiting such a practice. Aside from the fact that this is beyond the scope of her discrimination or retaliation claim, Joseph Marcec, Manager of OPM's Recruiting and Staffing Group, testified that it is "normal practice for Federal agencies to fill a position at a lower grade level than the previous incumbent. This provides developmental opportunities and growth for candidates selected instead of filling the position at the full performance level." Declaration of *Id.* ¶ 8. Indeed, Ms. Kline herself alleges that when she was originally hired as a GS-12 employee—with a nearly identical PD—it was with the intent that she take over Ms. Carter's duties when she

retired. But Ms. Kline had since been reassigned into a new position that "is very different, and consisted primarily of publications duties," *id.* ¶ 13; *see also* 2003 Kline PD, whereas the position advertised in 2006 "is focused almost exclusively on the regulatory issuances program of the PMG," *id.* ¶ 14.

Therefore, Ms. Kline needed to apply for the GS-12 regulatory position if she was interested in a position with primary responsibility of regulatory duties. Yet, she failed to apply for the GS-12 position, apparently still misunderstanding the contours of her own, different, position.

## IV. LEAVE TO AMEND

Ms. Kline seeks leave to amend her complaint "to include facts and legal representations that detail the liability of each of the individual Defendants, as well as statements of law detailing how Defendants Holder and Machen failed to seek justice and promote the public interest, committed fraud on the court, and obstructed justice." Pl.'s Mot. for Leave to Am. 3.

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." Nonetheless, a court may deny a motion to amend if it finds undue delay, bad faith, or dilatory behavior on the part of the movant, undue prejudice to the opposing party or futility of amendment. *Ponce v. Billington*, 652 F. Supp. 2d 71, 73 (D.D.C. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As this Opinion explains, it is clear from the record that Ms. Kline did not suffer any adverse action in this case, as she was never entitled to primary responsibility of regulatory duties and she failed to apply for the positions that *did* encompass these duties. As such, there is no set of facts under which the individual defendants could be held personally liable. Ms. Kline's proposed amendments would most certainly be futile, and the Court denies her motion to amend her complaint.

## V.  CONCLUSION

For the aforementioned reasons, plaintiff's motion for leave to amend her complaint will be DENIED, defendant's motion for summary judgment will be GRANTED and plaintiff's case DISMISSED. A separate Order consistent with this Opinion shall issue on this date.

Signed April 14, 2015 by Royce C. Lamberth, United States District Judge.